UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

NORBERT J. KELSEY,

    Petitioner,

v.                                                   Case No. 1:09-CV-1015

MELISSA LOPEZ POPE, et al.,            HON. GORDON J. QUIST

    Respondents.
_____/

**OPINION ADOPTING REPORT AND RECOMMENDATION**

    The issue in this case is whether a tribal court has jurisdiction over a misdemeanor crime between an accused Indian perpetrator, the Petitioner Norbert J. Kelsey, that allegedly occurred during a tribal meeting in a building owned by the tribe but located off the tribe's reservation and wherein the alleged victim was also a tribal member. The Magistrate Judge opined in a Report and Recommendation (R & R) that tribal courts do not have jurisdiction to prosecute crimes outside of Indian country, and also found that Kelsey's due process rights were violated when the tribal court expanded its jurisdiction in the criminal ordinance.[1]

    Pursuant to 28 U.S.C. § 636(b)(1), upon receiving objections to an R & R, the district judge "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." This Court has conducted a *de novo* review of the R & R, Respondent's Objections, Kelsey's Response, and the pertinent portions of the record. This Court agrees with the R & R and will therefore adopt it.

---

[1] The sole remaining Respondent in this case is Daniel Bailey, the Chief Judge of the tribal court.

**Procedural Background**

Kelsey is a member of the Little River Indian Band of Ottawa Indians (the Tribe), and he was a member of the tribal council. He was accused by a female member of the Tribe of having assaulted her during a meeting of the tribal council. This alleged assault occurred in a building owned by the Tribe but not on land within the Tribe's reservation. In other words the alleged assault did not occur in Indian country, but occurred in the State of Michigan.

Kelsey was tried, over his objection, by a tribal court and found guilty. He was sentenced to six months incarceration preceded by a probationary term. He appealed to the Tribal Court of Appeals and objected to the jurisdiction of the tribal courts. The Tribal Court of Appeals confirmed its jurisdiction and affirmed Kelsey's conviction and sentence. Kelsey filed a writ of *habeas corpus* with this Court asserting that the tribal courts had no jurisdiction over his alleged offense because it did not occur in Indian country.

**Discussion**

After reviewing the parties' briefs and conducting a hearing, the Magistrate Judge concluded that the Tribe lacked jurisdiction to prosecute Kelsey because the alleged crime occurred outside Indian country. He further found that the Tribe's attempt to retroactively expand its jurisdiction to encompass crimes that occurred outside Indian country, if effective, would have violated Kelsey's due process rights. Respondent raised eight separate objections to the R & R. The Court will address each in turn.

Respondent first argues that Supreme Court precedent makes clear that tribes have criminal jurisdiction over their members, regardless of where a crime occurs. However, the cases cited by Respondent only address tribes' authority to prosecute crimes within their territory. *See Duro v. Reina*, 495 U.S. 676, 110 S. Ct. 2053 (1990); *United States v. Wheeler*, 435 U.S. 313, 98 S. Ct. 1079

(1978). They do not stand for the proposition that tribal membership is the sole basis for determining jurisdiction, but rather for the proposition that a tribe's authority to prosecute crimes within its territory is limited to its members.

The passages from the cases that Respondent cites do not indicate otherwise. The Court's statement that "in the criminal sphere membership marks the bounds of tribal authority," *Duro*, 495 U.S. at 693, 110 S. Ct. at 2064, does not, as Respondent suggests, indicate that membership is the sole determinative factor for criminal jurisdiction. Rather, it describes the limits of a tribe's authority within its territory. Similarly, the Court's statement that tribes retain sovereignty over "both their members and their territory," *Wheeler*, 435 U.S. at 323, does not mean that a tribe's jurisdiction over its members is without bounds, just as it undoubtedly does not mean that a tribe's jurisdiction over its territory is without bounds. *See Duro*, 495 U.S. at 688, 110 S. Ct. at 2061 (citing the statement in support of the holding that tribal power to enforce criminal statutes "does not extend beyond the internal relations among members"). The statement suggests that tribal membership and territory are connected, and that tribes retain sovereignty where both are present. That interpretation was suggested by the Court, which cited the statement for the proposition that tribal sovereignty "centers on the land held by the tribe and on tribal members *within the reservation*." *Plains Commerce Bank v. Long Family Land & Cattle Co.*, 554 U.S. 316, 327, 128 S. Ct. 2709, 2718 (2008) (emphasis added). In sum, the Court finds that the analysis in the R & R is consistent with Supreme Court precedent.

Respondent next argues that the R & R misunderstands the Tribe's basis for asserting jurisdiction in this case, which is based on membership rather than territory. As discussed, however, the authority of a tribe over its members is not without bounds. Tribal sovereignty has both a membership and territorial component, *see id.*, and a tribe's authority to regulate relations among

3

members has limits. In the criminal context, that authority does not extend beyond a tribe's territory.

Respondent next argues that the R & R attaches too much significance to the concept of "Indian country," and cites language from several cases indicating that a tribe may exercise jurisdiction outside Indian country. However, those cases all involved the exercise of jurisdiction in civil, rather than criminal, matters. *See Prairie Band of Potowatomi Indians v. Pierce*, 253 F.3d 1234, 1256 (10th Cir. 2001) (holding that a state had to recognize license plates issued by tribes); *Native Vill. of Venetie IRA Council v. Alaska*, 944 F.2d 548, 559 (9th Cir. 1991) (holding that tribal courts had concurrent jurisdiction over child custody determinations involving tribal members); *John v. Baker*, 982 P.2d 738, 754 (Ala. 1999) (holding that tribes have jurisdiction over domestic disputes between their members that extends beyond territorial boundaries). Moreover, those cases are neither persuasive nor binding on this Court, and are not without criticism. *See* David Blurton, *John v. Baker and the Jurisdiction of Tribal Sovereigns Without Territorial Reach*, 20 Alaska L. Rev. 21 (2003) ("Separating the territorial and membership aspects of inherent tribal sovereign powers is inconsistent with Supreme Court precedent and creates confusion.").

Respondent next objects to the R & R's discussion of federal statutes limiting the criminal jurisdiction of tribes in Indian country, such as the Major Crimes Act, 18 U.S.C. § 1153. Respondent argues that such statutes do not support the Magistrate Judge's conclusion because they do not displace a tribe's jurisdiction over its members within its territory, but rather establish concurrent jurisdiction. While the statutes do not directly address the issue of a tribe's jurisdiction outside Indian country, they are instructive in determining how Congress views the issue of tribal jurisdiction. The statutes establish a comprehensive legislative framework for concurrent criminal jurisdiction in Indian country. However, the Court is not aware of a single statute discussing

4

concurrent jurisdiction outside Indian country. That legislative void lends to the conclusion that Congress believes that tribes do not have jurisdiction outside their territory. Although it is not conclusive, that belief is relevant in determining whether such jurisdiction exists. *See Oliphant v. Suquamish Indian Tribe*, 435 U.S. 191, 203, 98 S. Ct. 1011, 1018 (1978) ("While not conclusive . . . the commonly shared presumption of Congress, the Executive Branch, and lower federal courts that tribal courts do not have the power to try non-Indians carries considerable weight.").

Respondent argues that the R & R made a number of incorrect assumptions, including that tribal authority flows from a grant of such authority by Congress, that tribal authority in this case would divest the State of Michigan of authority, and that jurisdictional disputes based on membership would be more complicated than those based on territory. As to the issue of sovereignty, a reading of the entire R & R makes clear that it is premised on the principle that tribes retain inherent attributes of sovereignty unless they are divested of them. Moreover, the next two "assumptions" are not central to the outcome of this case. As previously noted, the Court believes that the Tribe does not have concurrent jurisdiction outside its territory. Because the nature of jurisdictional disputes plays no part in that conclusion, it is irrelevant whether such disputes would be less complicated if based on membership rather than territory.

Finally, Respondent argues that the Magistrate Judge exceeded his authority by changing the law rather than interpreting it. The Court disagrees. The R & R contains a comprehensive discussion of the relevant Supreme Court precedent and statutory framework, and ultimately concludes that the Tribe's exercise of jurisdiction outside of Indian country would be inconsistent with the status of tribes as dependent entities, as well as with two centuries of Congress's purpose. The R & R is an impressive effort to interpret a complex and previously unaddressed area of the law.

Because this Court has concluded that the tribal courts lacked jurisdiction over Kelsey's criminal prosecution, the Court will not address Kelsey's due process claim.

**Conclusion**

The Court agrees with the Magistrate Judge's conclusion that the tribal courts lacked jurisdiction in this case. This conclusion is supported by Supreme Court precedent, as well as the legislative framework for concurrent jurisdiction in Indian country. Accordingly, the Court will grant the Petition for Habeas Corpus.

A separate order consistent with this opinion will issue.


Dated: March 31, 2014 /s/ Gordon J. Quist
GORDON J. QUIST
UNITED STATES DISTRICT JUDGE